IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BYRON CHAPMAN,

Plaintiff,

v.

STARBUCKS CORPORATION, dba STARBUCKS COFFEE # 5740, and SYCAMORE PARTNERS, LLC,

Defendants.

2:09-cv-2526-GEB-EFB

ORDER GRANTING EACH DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON FEDERAL CLAIMS AND DECLINING SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE CLAIMS*

Pending are cross-motions for summary judgment on all of Plaintiff Byron Chapman's claims. Chapman's claims are alleged under the federal Americans with Disabilities Act ("ADA") and California law. Chapman seeks monetary relief from Defendants Starbucks Corporation, dba Starbucks Coffee #574 ("Starbucks") and Sycamore Partners, LLC ("Sycamore") under California law, and injunctive relief under the ADA that would enjoin Defendants to remove architectural barriers which allegedly interfered with Chapman's ability to access Starbucks.

* This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

**I. LEGAL STANDARD**

"The moving party [for summary judgment] initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, --- F.3d ----, 2010 WL 4608794, at *5 (9th Cir. 2010). If this burden is sustained, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." Id. "[W]e must draw all reasonable inferences supported by the evidence in favor of the non-moving party . . . ." Guidroz-Brault v. Missouri Pacific R. Co., 254 F.3d 825, 827 (9th Cir. 2001). However, "mere argument does not establish a genuine issue of material fact to defeat summary judgment." MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 518 (9th Cir. 1993).

Further, Local Rule 260 requires:

> Each motion for summary judgment . . . [to] be accompanied by a 'Statement of Undisputed Facts' that . . . enumerate[s] discretely each of the specific material facts relied upon in support of the motion and [to] cite the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon to establish that fact. . . .
>
> Any party opposing a motion for summary judgment . . . [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

E.D. Cal. R. 260 (a)-(b).

A party failing to specifically "challenge the facts identified in the [movant's] statement of undisputed facts, . . . is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006) (finding that a party opposing summary judgment who "fail[s] [to] specifically

challenge the facts identified in the [movant's] statement of undisputed facts . . . is deemed to have admitted the validity of [those] facts[.]"); see also Farrakhan v. Gregoire, 590 F.3d 989, 1002 (9th Cir. 2010) ("If the moving party's statement of facts are not controverted in this manner, 'the Court may assume that the facts as claimed by the moving party are admitted to exist without controversy.'").

## II. UNDISPUTED FACTS

Chapman has limited mobility as a result of a spinal cord injury and therefore he is unable to walk and uses a wheelchair. (Pl.'s Statement of Undisputed Facts ("SUF") ¶ 1, 3.) Chapman visited the Starbucks coffee shop located at 421 Pioneer Avenue in Woodland, California, on four occasions. Id. ¶ 6.

Starbucks is a place of public accommodation built after January 26, 1993. Id. ¶¶ 14-15. Starbucks leases the space where the coffee shop is located from Sycamore. Under the lease, Starbucks is solely responsible for any architectural barrier within Starbucks; and Sycamore, as the owner of the property, is responsible for any architectural barrier in the parking lot and common areas of the premises. (Starbucks' Mot. for Summ. J. Decl. of Tate ¶ 4; Sycamore's Mot. for Summ. J. Decl. of Engstrom ¶¶ 2-4.)

## III. PLAINTIFF'S CLAIMS

Chapman alleges in his complaint that when visited Starbucks he encountered architectural barriers that "interfered with . . . his ability to use and enjoy . . . the facility." (Compl. ¶ 10.) Chapman alleges "the barriers at the Coffee Shop included, but are not limited to, the following:" 1) "The access aisle has slopes and cross slopes that exceed 2.0% due to the encroaching built-up curb ramp;" 2) "The disabled parking spaces have slopes and cross slopes that exceed 2.0%

due to the encroaching built-up curb ramp;" 3) "The words 'NO PARKING' are not painted within the access aisle;" 4) "The entrance door has inaccessible 'panel' handles;" 5) "The pick-up counter is too high with no portion lowered to accommodate a patron in a wheelchair;" 6) "There is no seating designated as being accessible to the disabled;" 7) "There is no accessible seating inside or out;" 8) "The clothes hook inside the restroom is too high;" 9) "The toilet tissue dispenser protrudes into the clear floor and/or maneuvering space needed to access the water closet;" 10) "The toilet tissue dispenser is an obstruction to the use of the side grab bar;" 11) "The center of the water closet is more than 18 inches from the side wall;" and 12) "The pipes beneath the lavatory protrude too far from the back wall into the clear knee space required." Id. Chapman's first three claims concern barriers for which Sycamore is responsible, the remaining nine claims concern barriers for which Starbucks is responsible.

Chapman identified additional architectural barriers during his deposition testimony, and his expert listed additional barriers in his report. Sycamore challenges these barriers arguing: "It is elementary that a plaintiff cannot proceed on claims not included in his complaint." (Sycamore's Opp'n to Pl.'s Mot. for Summ. J. 1:28.) Sycamore also argues since it has remedied the alleged barriers pled in Chapman's complaint, and since Chapman may only seek an injunction under the ADA, Chapman's ADA claims are moot, and the Court should decline exercising supplemental jurisdiction over Chapman's state claims. Id. 3:25-5:8. Sycamore cites the Ninth Circuit decision in Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 969 (9th Cir. 2006), as support for its argument that only Chapman's complaint contains the claims at issue in

the summary judgment motions. In Pickern, the Ninth Circuit stated in pertinent part:

> Although the new allegations were not part of the original complaint, Pickern might have proceeded by filing a timely motion to amend the complaint. However, Pickern did not amend the complaint to include more specific allegations. She also did not incorporate the "preliminary site report" into her complaint. Instead, it appears that, many months after filing the complaint, she merely provided a "preliminary site report" to the Appellees as part of settlement negotiations. This did not make the preliminary site report part of the record and it did not give the Appellees notice of what allegations Pickern was including in the suit.

Chapman has not sought leave to amend the provision in the scheduling order filed January 14, 2010, which states "[n]o further . . . amendments to [the] pleadings is permitted" absent a showing of "good cause". Rather than addressing the "good cause" standard, Chapman makes the conclusory argument that he can proceed on barriers that are not included in his complaint. (Pl.'s Opp'n to Defs.' Mots. for Summ. J. 8:16-24.) However, "Ninth Circuit precedent is clear that, 'where . . . the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court.'" Adobe Lumber Inc. v. Hellman, No. CIV. 2:05-1510 WBS EFB, 2010 WL 760826, at *3 (E.D. Cal. March 4, 2010) (quoting Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008)).

Here, all scheduling deadlines in the scheduling order have past except for the final pretrial conference scheduled for February 14, 2011, and trial which is scheduled to commence on May 17, 2011. Further, Chapman has not filed and prevailed on a motion to amend the scheduling order, so that he could seek leave to amend his complaint under Federal Rule of Civil Procedure 15(a). See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) ("Unlike Rule

15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the [modification].'"). Therefore, the Court declines to consider Chapman's barrier claims which are not included in his complaint. See generally Eagle v. American Tel. and Tel. Co., 769 F.2d 541, 548 (9th Cir. 1985) ("agree[ing] with the district court that the pretrial Status Conference Order precluded [plaintiff] from raising a new theory of relief at the summary judgment stage").

## IV. DISCUSSION

### A. ADA Claims

Each summary judgment motion on Chapman's ADA claims will be addressed first. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

> An individual alleging discrimination under Title III must show that: (1) he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability.

Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1082 (9th Cir. 2004).

Facilities built after January 26, 1993, are required to be "readily accessible to and usable by" individuals who use wheelchairs, and must comply with the DOJ standards. 42 U.S.C. 12183(a)(3); 28 C.F.R. 36.401, 36.406(a). Under the ADA, the Department of Justice is instructed to issue regulations providing substantive standards for public facilities subject to the ADA. 42 U.S.C. § 12186(b). These regulations are known as the ADA Accessibility Guidelines ("ADAAG"). The ADAAG "provide valuable guidance for determining whether an existing facility contains architectural barriers." D'Lil v. Stardust Vacation Club, No. CIV-S-00-1496, 2001 WL 1825832, at *4 (E.D. Cal. Dec. 21, 2001).

"Damages are not recoverable under Title III of the ADA-only injunctive relief is available for violations of Title III." Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002); 42 U.S.C. § 12188(a)(1).

**1. ADA Claims Against Sycamore**

Sycamore argues Chapman's ADA claims which allege architectural barriers in the parking lot are moot. (Sycamore's Mot. for Summ. J. 9:11-19.) Chapman alleges in his complaint three architectural barriers in the parking lot: 1) "The access aisle has slopes and cross slopes that exceed 2.0% due to the encroaching built-up curb ramp;" 2) "The disabled parking spaces have slopes and cross slopes that exceed 2.0% due to the encroaching built-up curb ramp;" and 3) "The words 'NO PARKING' are not painted within the access aisle[.]" (Compl. ¶ 10.) However, Chapman's expert, Joe Card, noted in his report: "A newly constructed cut-in curb ramp including detectable warnings has been installed at the accessible parking." (Decl. of Card Ex. 1.) Card also stated: "The accessible parking has also been leveled out with asphalt concrete[.]" Id. Lastly, Chapman states in undisputed fact twelve that

the three parking lot barriers alleged in the complaint "have been removed[.]" (SUF ¶ 12.)

Since the alleged barriers in the parking lot have been remedied, this portion of Chapman's request for injunctive relief is moot. See Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1145 (S.D. Cal. 2006)("Because the only relief available under the ADA is injunctive, the fact the alleged barrier has been remedied renders the issue moot."). Therefore, Sycamore is granted summary judgment on Chapman's ADA claims.

**2. ADA Claims Against Starbucks**

**a. Starbucks' Expert**

Starbucks and Chapman each seek summary judgment on Chapman's ADA claims. These parties dispute whether Starbucks' expert Kim Blackseth can rely on pictures Starbucks gave him. Starbucks' motion relies on Blackseth's declaration and two reports he prepared. (Starbucks' Mot. for Summ. J. Decl. of Blackseth Exs. A-B.) Chapman counters: "Reliance on Blacksmith's [sic] reports is misplaced considering the fact that the May 7, 2010 report is based entirely on pictures provided to Blacksmith [sic] by defendant." (Pl.'s Opp'n to Defs.' Mot. for Summ. J. 4:22-24.)

Federal Rule of Evidence 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

Starbucks argues "[r]eliance on scene photographs is typical in these disability access matters and in accordance with [Federal] Rule [of Evidence] 703[.]" (Starbucks' Reply to Pl.'s Opp'n 2:1-2.) Starbucks also argues that "[i]n addition to his initial report dated May 7, 2010,

Mr. Blackseth had the opportunity to conduct his own inspection of the subject store to confirm his opinions and to prepare a supplemental report dated June 13, 2010." Id. 2:6-8. Blackseth states in his report: "At your request, we reviewed photographs of the subject facility at 421 Pioneer Ave, Suite A, Woodland, CA and will follow it up with a site visit in the next 30 days." (Decl. of Blackseth Ex. A.) Blackseth declares he "conducted an inspection and I have personal knowledge of the conditions of the STARBUCKS COFFEE COMPANY store located at 421 Pioneer Avenue, Woodland, California[.]" Id. ¶ 10. Chapman has not shown that Blackseth's use of the photographs under the circumstances here, where Blackseth visited the premises depicted in the photographs, is not the type of evidence reasonably relied upon by experts in the disability access field. Therefore, Chapman's objection is overruled.

**b. Door Handles**

Starbucks seeks summary judgment on Chapman's ADA claim that "[t]he entrance door has inaccessible 'panel' handles[.]" (Starbucks' Mot. for Summ. J. 4:1-5; Compl. ¶ 10.) ADAAG section 4.13.9 requires: "Handles, pulls, latches, locks, and other operating devices on accessible doors shall have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate."

Blackseth declares: "The store's entry door handles do not require 'grasping, tight pinching or twisting' and comply with ADAAG 4.13.9." (Decl. of Blackseth ¶ 13(a).) Blackseth also notes in his report: "The panel type hardware is an acceptable design and meets the criteria in 4.13.9, as long as the hardware is mounted to allow one to get a hand/fist between the panel and door. This hardware appears to comply." Id. Ex. A.

Chapman counters with "mere argument" which is insufficient to "establish a genuine issue of material fact to defeat summary judgment." MAI Sys. Corp., 991 F.2d at 518. Therefore, Starbucks is granted summary judgment on this ADA claim.

**c. The Pick-Up Counter**

Starbucks seeks summary judgment on Chapman's ADA claim that the "pick-up counter is too high with no portion lowered to accommodate a patron in a wheelchair[.]" (Starbucks' Mot. for Summ. J. 4:6-10; Compl. ¶ 10.) ADAAG section 7.2(1) requires the counter to be "at least 36 in (915 mm) in length with a maximum height of 36 in (915 mm) above the finish floor." Card noted in his report that "[o]n February 18, 2010, a permit to (lower the existing service counter to ADA) was . . . issued by the City of Woodland Building Department." (Decl. of Card Ex. 1.) Blackseth states in his May 7, 2010 report: "The required low counter was provided[.]" (Decl. of Blackseth Ex. A.) Blackseth also declares: "The store's pick-up counter is the appropriate height and length in that a portion of it is no higher than 34" and at least 36" long." Id. ¶ 13(b). This evidence shows that the counter height satisfied the ADA standard when Blackseth saw it. Therefore, this injunctive relief claim is moot, and Starbucks' summary judgment motion on this ADA claim is granted.

**d. Accessible and Designated Seating**

Starbucks seeks summary judgment on Chapman's following ADA claims: "[t]here is no seating designated as being accessible to the disabled" and "[t]here is no accessible seating inside or out[.]" (Starbucks' Mot. for Summ. J. 4:11-24, Compl. ¶ 10.)

Starbucks relies on the portion of Blackseth's declaration in which he avers: "The store has appropriate disabled seating. There is no California Building Code (CBC) or Americans with Disabilities Act (ADA)

requirement that seating be 'designated'. At least . . . 5% of the store's seating is accessible to Mr. Chapman. In any event, Fig. 3.2 and 3.3 of Exhibit 'A' illustrates the International Symbal [sic] of Accessibility (ISA) of the complaint [sic] tables." (Decl. of Blackseth ¶ 13(c).)

Chapman argues the seating is not accessible and violates ADAAG section 4.32.2. (Pl.'s Mot. for Summ. J. 13:12-23.) Chapman cites his own declaration in support of this argument. (Id.; Pl.'s SUF ¶ 29.) Chapman declares he "reviewed the report of Joe Card, dated May 21, 2010, and [has] learned from said report that the following barriers continue to exist at the subject restaurant:"

> The seating designated for the disabled in the coffee shop is located in a way so that it is entirely inaccessible to a person or patron in a wheelchair. The seating is located in a corner with two sides blocked off for use by someone in a wheelchair by windows (prohibiting a forward approach). A third side of the table is next to the entrance to the coffee shop; if a person in a wheelchair attempted to sit in this location they would block the door. The fourth side of the table is placed so that if a person in a wheelchair attempted to use it they would have to navigate through the customers of the coffee shop—making it practically impossible to use.

(Decl. of Chapman ¶ 12(j).) However, Card's report does not mention the seating at the Starbucks or identify any problems with the seating. (Decl. of Card Ex. 1.)

ADAAG section 4.32.2 requires that "if seating spaces for people in wheelchairs are provided at fixed tables or counters, clear floor space complying with 4.2.4 shall be provided. Such clear floor space shall not overlap knee space by more than 19 in (485 mm)." Defendant's expert opines that Starbucks has appropriate disabled seating, and at least 5 percent of the seating is accessible to Chapman. Chapman's contrary averments comprise "mere allegation and speculation

[which] do not create a factual dispute for purposes of summary judgment." Nelson v. Pima Community College, 83 F.3d 1075, 1081-82 (9th Cir. 1996). Therefore, Starbucks is granted summary judgment on these ADA claims.

**e. The Clothes Hook Inside the Restroom**

Starbucks also seeks summary judgment on Chapman's claim that the clothes hook inside the restroom is too high. (Starbucks' Mot. for Summ. J. 5:6-9; Compl. ¶ 10.) Blackseth declares: "The store's restroom has two coat hooks, one has a reach range of 46" which is compliant with access regulations and is within reach ranges for a front (48") or side (54") approach." (Decl. of Blackseth ¶ 13(d).) Although Chapman alleged this claim in his complaint, he has not addressed it in his motion or in his opposition to Starbucks' motion. "To defeat a summary judgment motion, . . . [a] party may not rest upon the mere allegations or denials in the pleadings." Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1033 n.14 (9th Cir. 2008) (internal quotation marks omitted). Therefore, this injunctive relief claim is moot, and summary judgment is granted in favor of Starbucks on this ADA claim.

**f. The Toilet Tissue Dispenser**

Starbucks seeks summary judgment on Chapman's following ADA claims: the "toilet paper dispenser protrudes into the clear floor and/or maneuvering space needed to access the water closet," and the "toilet tissue dispenser is an obstruction to the use of the side grab bar[.]" (Starbucks' Mot. for Summ. J. 5:10-6:2, Compl. ¶ 10.) Blackseth declares: "The restroom's toilet paper dispenser does not protrude into the required clear space or prevent the use of the grab bar. The dispenser is at 34.5" from the back wall and as such it complies with both the CBC and ADAAG." (Decl. of Blackseth ¶ 13(e).) Chapman has failed to address

this claim in his motion or in his opposition to Starbucks' motion, and Card did not address this claim in his report. (Pl.'s Mot. for Summ. J. 4:28-5:17; Decl. of Card Ex. 1.) Therefore, Starbucks is granted summary judgment on these ADA injunctive relief claims.

**g. The Toilet**

Starbucks seeks summary judgment on Chapman's ADA claim that the "center of the water closet is more than 18 inches from the side wall[.]" (Starbucks' Mot. for Summ. J. 6:3-5, Compl. ¶ 10.) Blackseth declares: "The toilet is centered at 18" and complies with access regulations." (Decl. of Blackseth ¶ 13(f).) Chapman failed to address this claim in his motion or in his opposition brief, and Card did not address this claim in his report. (Pl.'s Mot. for Summ. J. 4:28-5:17; Decl. of Card Ex. 1.) Therefore, Starbucks motion for summary judgment on this ADA injunctive relief claim is granted.

**h. The Pipes Beneath the Lavatory**

Starbucks seeks summary judgment on Chapman's claim that the "pipes beneath the lavatory protrude too far from the back wall into the clear knee space required." (Starbucks' Mot. for Summ. J. 6:6-10, Compl. ¶ 10.) Blackseth declares: "The lavy pipes are compliant. They do not protrude into required knee clearance." (Decl. of Blackseth ¶ 13(g).) Chapman does not address this claim. Therefore, Starbucks is granted summary judgment on this ADA injunctive relief claim.

**B. State Claims**

Since Defendants have been granted summary judgment on all of Plaintiff's ADA injunctive relief claims, only Plaintiff's state claims remain. A district court may decline to exercise supplemental jurisdiction over a state claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

"While discretion to decline . . . supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the . . . values of economy, convenience, fairness and comity" as delineated by the Supreme Court in United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1996). Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir. 1997).

Three of the four factors do not weigh in favor of continuing the exercise of supplemental jurisdiction over Plaintiff's state claims. The judicial economy factor does not weigh in favor of continuing to exercise supplemental jurisdiction over the remaining state claims since time has not been invested analyzing those claims. See Otto v. Heckler, 802 F.2d 337, 338 (9th Cir. 1986) ("The district court, of course, has the discretion to determine whether its investment of judicial energy justifies retention of jurisdiction or if it should more properly dismiss the claims without prejudice.") (citation omitted). Nor do the comity and fairness factors weigh in favor of exercising supplemental jurisdiction since "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Gibbs, 383 U.S. at 726; see also Acri, 114 F.3d at 1001 ("The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). However, it is unclear how the convenience factor weighs in the analysis since this case is scheduled for trial in May at the same time a multi-defendant criminal trial is scheduled. Unless the scheduled criminal trial is resolved or continued, this case will not be tried when it is scheduled. Further, it is unknown when this case could

be tried in state court. Nevertheless, the Gibbs values do not weigh in favor of continuing to exercise supplemental jurisdiction over the remaining state claims. Therefore, Plaintiff's state claims are dismissed without prejudice under 28 U.S.C. § 1367(c)(3).

**V. CONCLUSION**

For the stated reasons, each Defendant's summary judgment motion on Plaintiff's ADA claims is GRANTED and Plaintiff's state claims are dismissed without prejudice under 28 U.S.C. § 1367(c)(3).

Dated: January 6, 2011

GARLAND E. BURRELL, JR.
United States District Judge